**Americo J. ZINNO**

v.

**Richard PATENAUDE et al.**

**No. 2000–145–Appeal.**

Supreme Court of Rhode Island.

May 4, 2001.

Americo Zinno, pro se.

Scott K. Pomeroy, Greenwich, for defendant.

Present WILLIAMS, C.J., BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on March 12, 2001, pursuant to an order directing both parties to appear and show cause why the issues raised in this appeal should not be summarily decided. The plaintiff, Americo J. Zinno (plaintiff or Zinno), appealed an entry of summary judgment in favor of the defendants Richard Patenaude (Patenaude), Brown University (university) and the State of Rhode Island (collectively defendants). After hearing the arguments of counsel and examining the record and memoranda submitted by the parties we are of the opinion that cause has not been shown and that the issues raised by this appeal will be decided at this time. The events insofar as they are pertinent to this appeal are set forth in *Zinno v. Patenaude*, 711 A.2d 646 (R.I.1998) (mem.). In brief, the facts are as follows.

Both Zinno and Patenaude were employed by the university at the time these events took place. The plaintiff contended that in March 1991, while at work, he was assaulted by Patenaude and suffered an injury to his neck. The plaintiff did not report the assault. Some eight days after the incident, plaintiff filed a workers' compensation claim with the university in which he stated that the injury to his neck occurred while he was moving a drafting table. As a result of his claim, Zinno received workers' compensation benefits for a period of one year. The benefits were terminated when an orthopedic consultant employed by the university determined that the condition suffered by plaintiff was arthritic in nature and not a work-related injury.

On June 2, 1992, subsequent to the termination of his workers' compensation benefits, Zinno informed the university that his arthritic condition was aggravated by the assault. After the workers' compensation coordinator determined that the assault was not work-related, plaintiff's complaint was thus directed to the human resources department. The plaintiff thereafter remained on unrestricted duty at the university. The plaintiff contended that he was forced into early retirement as a result of the unrestricted duty and constant harassment by Patenaude and other coworkers. Zinno then filed suit in the Superior Court against Patenaude and the university. Summary judgment was entered in favor of defendants, and plaintiff has appealed.

The plaintiff's appeal in this matter is limited to count 3 of the second amended complaint, in which he sought recovery under the Rhode Island Whistleblowers' Protection Act, G.L.1956 chapter 50 of title 28 (the act). Specifically, plaintiff contended that the actions taken on behalf of the university to "arbitrarily terminate the plaintiff's workers' compensation benefits, and to assign him to harsh jobs was a vindictive and deliberate act intended to aggravate plaintiff's painful condition, and, to force the plaintiff into early retirement in retaliation [for] his whistle-blower activities." Pursuant to § 28–50–3, an employee is protected from retaliatory discharge or discrimination if "the employee or a person acting on behalf of the employee, *reports or is about to report to a public body* * * * a violation which the employee knows or reasonably believes has occurred or is about to occur, of a law or regulation or rule promulgated under the law of this state * * *." (Emphasis added.)

■ Zinno contended that he was harassed at work and ultimately driven from employment at the university because he

reported to his superior violations of the Occupational Health and Safety Act (OSHA); to wit air spraying in the "paint shop" as opposed to a designated, well-ventilated area. Further, plaintiff maintained that he was "whistleblowing" when he attempted to expose his union steward, Patenaude, for certain harassing and otherwise molesting behavior. Because he felt he could not get proper relief through the union, he informed his superiors at the university of Patenaude's behavior.[1] Significantly, by his own admission, Zinno stated that he never complained or threatened to complain to anyone outside the university. When asked whether he thought his harsh job assignments were made in retaliation for either his complaints against Patenaude or his complaints about OSHA violations, he stated "specifically, no." The plaintiff went on to explain that the reason he believed that he was being punished for his complaints was the fact that he was ignored by the university, admitting that no one said anything to him one way or another. When asked whether he ever told anyone at the university that he was going to complain to any outside body, he stated "[a]s I recall, no."[2]

 In the case before us it is clear that the plaintiff was not subjected to retaliation by the defendants within the meaning of the act. For conduct to fall within the purview of the act, a plaintiff must report or threaten to report, misconduct to a public body; neither of which occurred in this case. By his own admission, Zinno neither reported the alleged harassment or OSHA violations to a public body, nor did he tell anyone at the university that he intended to do so.

Accordingly, the plaintiff's appeal is denied and dismissed. The judgment appealed from is affirmed and the papers of this case are remanded to the Superior Court.

JUSTICE LEDERBERG did not participate.

---

1. The result of the grievance filed with the union by plaintiff against Patenaude was a $250 fine imposed upon Zinno.

2. The plaintiff contended that he reported the harassment and OSHA violations to former Attorneys General Arlene Violet and Jeffrey Pine. The only reference to Attorney General Violet in the record is that of a private attorney representing Zinno in his effort to avoid paying a monetary fine imposed upon him by his union. With respect to Attorney General Pine, the only communication with him contained in the record is a letter written by plaintiff to the then Attorney General to complain about Attorney Arlene Violet's representation of him. Neither of these communications rose to the level of reporting to a public body to trigger the act.